### PELEG ROSE *vs.* DAVID GALLUP.

A quantity of tools and machinery, belonging to *A*, were placed by him in the possession of *B*, who used them, together with other similar property belonging to himself, in the prosecution of his business as a machinist. As a necessary consequence of this use, though without the knowledge of *A*, the tools and machinery of both became so intermingled that it was difficult to distinguish the property of one from that of the other. *C*, having purchased what belonged to *A*, who sold it by words of general description, without specifying all the different articles, sent workmen to remove it into his own custody, but they were prevented from doing this by *B*, under an unfounded claim of title in himself. Upon this *A* went upon the premises where the property sold was, put the workmen in possession of it, and authorized and advised its removal, but did not point out to them or describe what articles it comprised. *Held* that *A* was not responsible to *B* for the act of the workmen in inadvertently removing, with the property sold, other similar articles belonging to *B*.

Whether, upon a declaration, charging in a single count trespasses both to real and to personal property, both causes of action are admitted by a default: *Quære.*

In an action of trespass *de bonis asportatis*, a default is simply an admission on the part of the defendant that he is unable to make a complete defence, and entitles the plaintiff to nominal damages only, unless he proves a just claim for a larger sum.

ACTION of trespass, in two counts, each charging a trespass *quare clausum fregit* and a further trespass *de bonis asportatis*. The defendant suffered a default, and, upon a hearing in damages, the following facts were found by the Court.

On the 11th day of November, 1863, and for more than a year previous, the plaintiff had been in possession, as a tenant

Rose *v.* Gallup.

at will under the Quinebaug Bank, of a machine shop and a large quantity of tools and machinery therein, and was carrying on the business of a machinist there, using other tools and machinery of his own, which he had placed in the building, in connection with those belonging to the bank.   In the prosecution of this business the tools and machinery of the plaintiff necessarily became mingled with those of the bank, so that it was difficult to distinguish the property of the one from that of the other.   On the day in question the bank sold all their personal property in the plaintiff's possession to the Mystic Iron Works, conveying it by words of general description, without specifically mentioning all the articles, which were very numerous.   On the 13th day of November, 1863, the Mystic Iron Works sent workmen to remove the property purchased from the shop.   These men worked during two days in preparing the articles for removal, and in removing some of them, during most of which time the plaintiff was present, and assented to their operations, knowing that the property had been sold to their employers.

On the evening of the second day the plaintiff, acting under an unfounded claim of title in himself to the property sold, ejected one of the workmen, who had been left in charge, locked up the shop, and refused to allow anything more to be removed.   The defendant, who was the president of the bank, upon being informed by the workmen the next morning of what had occurred, directed them to enter the shop by force, and, upon their effecting this, put them in possession of the remainder of the property sold, and authorized and advised them to remove it, but did not point out or describe to them what this property was.

The workmen were employed during ten days more in removing the remaining articles, but the defendant took no further part in the transaction.   They used all the care and caution that could be exercised in such a case to avoid taking any property belonging to the plaintiff, but, notwithstanding, did in fact carry off a number of articles belonging to him, under the belief that they were part of the property sold.

Damages were assessed by the court at three several sums,

with a view to different aspects of the case, and the question reserved for the advice of this court as to which of these sums the plaintiff was by law entitled to recover.

*Wait* and *Lucas*, with whom was *Bolles*, for the plaintiff.

1. A default in an action of tort admits the traversable allegations in the plaintiff's declaration, and here both an entry upon the plaintiff's close and an asportation of his property were alleged and are admitted. *Bates* v. *Loomis*, 5 Wend., 134; 2 Saund. Pl. & Ev., 218; *Harlan* v. *Smith*, 6 Cal., 173; *Tappan's Petition*, 4 Fost., 43; *Holly* v. *Brown*, 14 Conn., 255; *Gardner* v. *Field*, 1 Gray, 151; *Green* v. *Hearne*, 3 T. R., 301.

2. It appears from the finding that the defendant and workmen acted in concert, and therefore each was liable for the injury done by all. " One who does an unlawful act is considered the doer of all that follows." Whatever may have been the defendant's intentions, he will not be permitted to apportion the wrong suffered by the plaintiff; he authorized the acts done, and must abide the consequences. *Guille* v. *Swan*, 19 Johns., 381; *Ellis* v. *Sheffield Gas Consumers' Co.*, 22 Eng. L. & Eq., 198; 1 Chitt. Pl., 180, n. 3, (12th Am. ed.) ; Story on Agency, secs. 219, 456; *Armstrong* v. *Cooley*, 5 Gilm., 509; *Church* v. *Mansfield*, 20 Conn. 284.

3. The fact that the property of the plaintiff was intermingled with the property sold is of no avail to the defendant. *Treat* v. *Barber*, 7 Conn., 274.

*Hovey* and *Halsey* for the defendant.

1. By the default in this case a technical cause of action is admitted and nothing more. This might consist of a trespass to the real estate, or taking a single article of personal property. Nominal damages only are to be awarded, unless the plaintiff proves a substantial injury. *Sherwood* v. *Haight*, 26 Conn., 432 ; *Havens* v. *Hartford & New Haven R. R. Co.*, 28 Conn., 69; *Parker* v. *Hotchkiss*, 25 Conn., 321 ; *Holly* v. *Brown*, 14 Conn., 255.

2. The plaintiff is not responsible for the asportation of the

plaintiff's property by the agents of the Mystic Iron Works. He neither did the act himself, nor did he direct, advise or authorize it to be done by others.   2 Greenl. Ev., 621, and cases cited ; *The Thames Steamboat Co.* v. *The Housatonic R. R. Co.*, 24 Conn., 40 ; *M'Manus* v. *Crickett*, 1 East, 106. The only act done by the defendant, besides breaking and entering the shop in which the property was deposited, was to authorize the asportation of the property which had been sold by the Quinebaug Bank to the Mystic Iron Works, and this, as the agent of the bank, he had a right to do.   *Bowler* v. *Eldredge*, 18 Conn., 1, 16, 17 ;   3 Bla. Comm., (Sharswood's ed.,) 4, and note 3.

PARK, J.   The principal question in this case is, whether the defendant is liable, in this form of action, for the act of the workmen of the Mystic Iron Works in taking and carrying away personal property belonging to the plaintiff, while transacting the business of that company in removing certain articles of personal property, sold to them by the Quinebaug Bank.

The case finds that the property sold was situated in a building belonging to the bank, but which was in the possession of the plaintiff as a tenant at will.   The plaintiff was opposed to the removal of the property sold, and refused his assent to the entrance of the workmen into the building for the purpose of removing the same.   Thereupon the defendant, as president of the bank, directed the workmen to enter the building by force.   After an entrance had been effected, the defendant put the workmen in possession of the property sold, and *authorized* and *advised* them to remove the same.   The property sold and the articles belonging to the plaintiff consisted of machinery and tools, such as are commonly found where work upon iron is carried on, and were mingled together as they had been used.   This property of the plaintiff was carried away by mistake in removing the property sold.

These are the principal facts on which we are to advise the superior court whether the defendant is liable in trespass for the removal of the property belonging to the plaintiff. ·

It appears by the contract of sale that the Mystic Iron

Works were to take possession of the property sold at the place where it was found by their servants and workmen. The bank, through their president, caused an entrance to be made into the building, for the purpose of fulfilling this part of their contract, and, when fulfilled, all right, title and interest in the property passed from the bank to the Mystic Iron Works. Indeed, possession had been delivered some days before this transaction took place, and, no doubt, at that time the bank ceased to be the owners of the property, but when the workmen of the Mystic Iron Works were driven by the plaintiff from the building, the bank felt that good faith to the vendees required them to re-deliver the property.

The removal of the property then was solely the act of the Mystic Iron Works. The men who removed the same were in their employ, subject to their order and direction, and cannot in any sense be considered as doing any thing for the defendant or his principal. It was of no importance to them what became of the property. Under these circumstances, if the defendant is responsible, his liability must arise from the fact that, after possession was re-delivered to the workmen, he *authorized* and *advised* them to remove the property sold. Does it arise from the fact that he authorized them to remove the property? The Mystic Iron Works had this authority by the contract of sale. All the authority that was necessary on the subject, consisted in giving them power to take and keep possession of the building, so far and so long as was necessary to remove the property. The right to remove the property, as such, arose from the fact of ownership. At the time this authority was given, it was somewhat in doubt whether the bank had the right to sell the property, inasmuch as the plaintiff claimed to be the owner of it by a prior purchase from the bank, and the authority that was given by the defendant, no doubt, had some reference to this, and was intended to save the workmen harmless, not only in taking possession of the building, but from all liability that might arise from the claim of the plaintiff in this respect.

The most favorable view for the plaintiff that can be taken of the authority conferred is, that it encouraged the workmen

to remove the property sold. It may well be questioned, however, whether it was so intended, or had any such effect. We have seen that it was of no importance to the defendant, or the bank, whether the property was removed or not. They were desirous to fulfill their contract with the Mystic Iron Works, and that was all.

The Mystic Iron Works intended, from the first, to remove the property, and had sent workmen to accomplish the object, by whom a part of it had been removed before any express authority was given. But, granting that the authority conferred had the effect claimed by the plaintiff, and taking into consideration also the advice that was given by the defendant to the workmen, let us inquire what responsibility was thus incurred. No one will doubt that the act authorized and advised to be done was lawful, so far as this part of the case is concerned. The question then is, whether a party who encourages the owner of personal property, or his representative, to remove the same from one place to another, becomes liable for whatever goods belonging to a third party may be taken and carried away by mistake, in performing the act advised to be done. Suppose *A* is the owner of a horse that is kept at a livery stable. He sells the horse to *B*, and, by the contract of sale *B* is to take the horse at the stable. After the sale is perfected *A* advises *B* that, for certain reasons, he had better take the horse immediately. *B* takes, by mistake, the horse of *C*, that closely resembles the horse sold. Is *A* liable for the act? If the advice would be sufficient to make him liable, then suppose that, instead of the advice, after the contract of sale was perfected, *A* should direct *B* in the shortest way to the barn, and should furnish a halter for the purpose of removing the animal, and thus should render assistance to B. Would this make him liable? If it would, then it might well be urged that the sale itself would be sufficient for the purpose. *A* sells the horse expecting *B* will take it. By the sale he authorizes him to take it, and certainly this would be sufficient, if liability arises in the other cases supposed. We are satisfied that *A* would not be liable in any of these cases; neither is the defendant in the case

under consideration, which is similar in all essential particulars to the first case supposed.

But it is said that the property sold was mingled with the property of the plaintiff, and that the difficulty of distinguishing between the two classes of property was so great, that the taking of property of the plaintiff was a natural and necessary consequence resulting from the taking of the property sold.

But the superior court has not so found, and this alone is a sufficient answer. Neither is it found that the defendant knew that the two classes of property were mingled together, much less that there was any difficulty in distinguishing the one class from the other. All that is stated upon the subject is that the workmen exercised all the care and caution that could be used in such a case to prevent the taking of the property of the plaintiff. They exercised proper care, according to what information they had, but the fact that they took so large an amount of property belonging to the plaintiff shows that their knowledge upon the subject was limited. The two classes of property were simply mingled together, and it is difficult to see how the taking of the one class could necessitate the taking of the other. The difficulty arose from the want of information sufficient to identify the property sold. The Mystic Iron Works knew what property they purchased, and if they sent workmen to remove it, without giving them sufficient knowledge to distinguish it from the property of the plaintiff, they only are responsible.

The remaining question is in relation to the default. The declaration contains two counts, and each of them sets forth a trespass to the real, and likewise to the personal property of the plaintiff. *Holly* v. *Brown*, 14 Conn., 255. The counts are double, and the question has been discussed before us whether the default admits a double or a single cause of action. If it admits a double cause of action, then the plaintiff contends that damages must be given, not only for the trespass *quare clausum fregit*, but likewise for that *de bonis asportatis*. He claims that the default precludes the defendant from denying his liability in both respects, to the full extent of the plaintiffs injury, and that all that was left for the court to do was simply to ascertain the amount.

The view that we have taken of the case renders it unnecessary to determine what is admitted by the default, farther than to show that the conclusion to which the plaintiff comes cannot be correct, even if a double cause of action is admitted upon the record.

We are requested to advise the superior court which'of the three sums, named in the finding of facts, judgment should be rendered for the plaintiff to recover.

No question is made but that each of the three sums includes all the plaintiff is entitled to recover for any trespass committed to the real estate. The sums are made to conform to three different views of the case in relation to the personal property. If the defendant is responsible for all the injury committed to the plaintiff, then it is found that the largest sum named should be the measure of damages, but if the defendant is not responsible for the removal and conversion of the personal property, then the court finds that the smallest sum must limit his liability. The smallest sum then includes all the substantial damages that the plaintiff is entitled to recover, provided this court shall be of the opinion that the defendant is not responsible for the removal of the personal property belonging to the plaintiff. Whether he is or not is the sole question that we are required to consider. We have seen that he is not responsible, upon the facts found by the court below, and the question now is whether the default makes him liable, as matter of law, to the full extent of the plaintiff's injury.

It will be conceded that the default in this case can admit no more in relation to the personal property, than would be admitted if the declaration contained but one count, *de bonis asportatis.*

Suppose the declaration contained but one count in this respect, what would be admitted by a default?

It would doubtless render the defendant technically liable, but would it do anything more?

The declaration charges the defendant with the removal, not of one article, particularly describing it, but of a large number of divers and sundry articles, some of merely nominal

value, consisting of small screws, bolts and old files, and many others of great value. In reference to all these articles questions might be made, under the general issue, as numerous as the articles themselves. Each one of them might be the subject of controversy, and any one of them might be sufficient to decide the case for the plaintiff. Surely the defendant, under such circumstances, if unable to make successful defence in reference to some of the articles, might suffer a default and contest his liability in regard to the others in the assessment of damages. A default in such a case would admit no more than what would be sufficient to decide the case in favor of the plaintiff, upon the plea of the general issue. It is simply an admission, on the part of the defendant, that he is unable to make a complete defence.

We are satisfied that no case can be found which goes farther than this, that in a case like the present a default admits a liability for the removal of some one of the articles described in the declaration, and without further proof nominal damages only can be given. *Havens* v. *Hartford & New Haven R. R. Co.*, 28 Conn., 69; *Bolles* v. *Loomis*, 5 Wend., 134; *Green* v. *Hearne*, 3 T. R., 301.

It would seem to follow, as a necessary consequence, that if nominal damages only can be given without further proof, the defendant may contest his liability, so far as the plaintiff seeks by proof to enhance the damages beyond a nominal sum. *Havens* v. *Hartford & New Haven R. R. Co.*, supra.

If then the default admits a double cause of action, the sum of thirty-six dollars is all the substantial damage that the plaintiff is entitled to recover; and so we advise the superior court.

In this opinion the other judges concured.